COX, RESPONDENT, *v.* HALL ET AL., APPELLANTS.

(No. 3,812.)

(Submitted October 8, 1917.   Decided October 26, 1917.]

[168 Pac. 519.]

*Reformation of Instruments — Mutual Mistake — Complaint—*
*Findings—Laches—Description of Land—"More or Less."*

Reformation of Instruments—Mistake—Complaint—Sufficiency.
  1.   If the complaint in a suit looking to the reformation of an instrument on the ground of mutual mistake, alleges facts which command the inference of such mistake, it sufficiently alleges mistake, unless deliberate fraud is imputed.

Same—Mistake—Complaint—Inferences.
  2.   By alleging mutual mistake in a suit of the nature of the above, it is made apparent that plaintiff has been guilty of some degree of

negligence which may or may not be excusable in the circumstances of the case.

Same—Courts of Equity—Power to Grant Relief.

3.   Courts of equity are not bound by cast-iron rules, but are governed by rules which are flexible and adapt themselves to particular exigencies, so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other.

Same—Mistake—Complaint—Sufficiency.

4.   Complaint which alleged in substance that plaintiff had agreed to sell, and defendant to buy, a parcel of land; that he had accurately described the land to an attorney who undertook to reduce the terms of the agreement to writing, but in doing so included more land than was intended to be conveyed; that, relying upon, and having confidence in, the attorney's integrity and ability, plaintiff failed to observe the inaccuracy, as did also defendant, or made no mention of it if observing it; and that in this faulty condition the contract was completed,— *held* sufficient to state a case for reformation on the ground of mutual mistake of the parties.

[As to reformation of instruments on the ground of mistake, see notes in 30 Am. St. Rep. 621; 117 Am. St. Rep. 227.]

Same—Findings—Conformity to Issues.

5.   Under the general allegation of mistake, a finding that plaintiff was a man of meager education, familiar with neither land surveys nor technical or legal descriptions of land, and unable to detect errors in such descriptions, was germane to the issues, and thus supported by the pleadings.

Same—Laches—Rule.

6.   Where it appeared that, though plaintiff was given to understand that defendant would consent to the correction of the deed sought to be reformed, he was not definitely advised that correction would be refused until about eighteen months before commencing suit, and thereafter used reasonable diligence to bring his cause up for adjudication but was delayed by circumstances beyond his control, he was not barred from recovery by laches; the rule being that laches short of the period of limitations will not bar relief, unless unusual circumstances are affirmatively shown rendering relief inequitable.

Same—Description of Land—"More or Less."

7.   The fact that the conveyance contained the recital that a given number of acres "more or less" was thereby transferred did not render reformation inequitable, since that expression is designed to cover small excesses or deficiencies in the acreage of a particular tract sold as such, but not to include something (21.33 acres, in this instance) which it never was the intention of the parties to include.

[As to reformation of contract because of mistake of law as to effect of instrument, see comprehensive note in 28 L. R. A. (n. s.) 900.]

*Appeal from District Court, Madison County; Wm. A. Clark, Judge.*

Suit by George B. Cox against M. S. Hall and another. From a decree for plaintiff and an order denying a new trial, defendants appeal.

*Messrs. Callaway & Beckett, Mr. M. M. Duncan* and *Mr. Ike E. O. Pace,* for Appellants, submitted a brief; *Mr. Lew L. Callaway* argued the cause orally.

It does not appear from the allegations of the complaint either that the mistake was mutual or that it did not occur by or result from the negligence of the plaintiff. (*American Mining Co.* v. *Basin & Bay State Mining Co.,* 39 Mont. 476, 24 L. R. A. (n. s.) 305, 104 Pac. 525.) The plaintiff was guilty of negligence in signing the contract, and there are no allegations whatsoever which indicate that either of the defendants was guilty of any negligence in the making of the contract. (*Lyman* v. *United Ins. Co.,* 17 Johns. 373, 376; *American Mining Co.* v. *Basin & Bay State Mining Co.,* 39 Mont. 476, 484, 24 L. R. A. (n. s.) 305, 104 Pac. 525; *Grieve* v. *Grieve,* 15 Wyo. 358, 11 Ann. Cas. 1162, 9 L. R. A. (n. s.) 1211, 89 Pac. 569.)

Courts will not give relief in case of a unilateral mistake by reformation of contract. (*Mills* v. *Lewis,* 55 Barb. (N. Y.) 179; *Forester* v. *Van Auken,* 12 N. D. 175, 96 N. W. 301; 34 Cyc. 915.) This action is brought to reform a contract, not to cancel or rescind one. A unilateral mistake might enable a party to secure the cancellation of a writing, but it would not enable such party to secure the reformation thereof. (*Hayward* v. *Wemple,* 152 App. Div. 195, 136 N. Y. Supp. 625; 6 Cyc. 286.)

The degree of carelessness which will prevent relief is stated in varying terms and depends largely upon the circumstances of the case. (16 Cyc. 69.) The mistake to entitle one to relief must not be the consequence of his own culpable inertness. (*Farrell* v. *Bouck,* 60 Neb. 771, 84 N. W. 260.) "Or the consequence of willful ignorance." (*Schaffner* v. *Schilling,* 6 Mo. App. 42.) "Or his culpable negligence." (*Compau* v. *Godfrey,* 18 Mich. 27, 100 Am. Dec. 133.) "Or his gross negligence." (*Picot* v. *Page,* 26 Mo. 398; *Schaffner* v. *Schilling, supra.*) "Or his carelessness or inattention." (*Wood* v. *Patterson,* 4 Md. Ch. 335; *Robertson* v. *Smith,* 11 Tex. 211, 60 Am. Dec. 234; *Francis* v. *Parks,* 55 Vt. 80.) "Or want of such diligence as might be fairly expected from a reasonable person." (*Kearney* v. *Sascer,*

37 Md. 264.) "Or want of ordinary prudence or vigilance." (*Capehart* v. *Mhoon,* 58 N. C. 178.) "Or want of due diligence." (*Lamb* v. *Harris,* 8 Ga. 546; *Thomas* v. *Bartow,* 48 N. Y. 193.) "Or want of reasonable diligence." (*Keith* v. *Brewster,* 114 Ga. 176, 39 S. E. 850; *Brown* v. *Fagin,* 71 Mo. 563.) "Or want of vigilance." (*Trippe* v. *Trippe,* 29 Ala. 637.) Equity does not relieve against mistakes which ordinary care could have prevented. "Conscience, good faith and reasonable diligence are necessary to call a court of equity into activity." (*Bidder* v. *Carville,* 101 Me. 59, 115 Am. St. Rep. 303, 63 Atl. 303; *Riley* v. *Blacker,* 51 Mont. 364, 152 Pac. 758.)

*Mr. M. J. Cavanaugh* and *Mr. W. N. Waugh,* for Respondent, submitted a brief; *Mr. Cavanaugh* argued the cause orally.

Where parties intrust the duty of formulating a writing embodying their agreement to an attorney or scrivener, as here, and he by his own mistake or fraud embodies in it stipulations and conditions other than those agreed upon, it may be reformed at the instance of the party injured, though he signed it without reading. (*Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469.) The doctrine of *Hennessy* v. *Holmes,* 46 Mont. 89, 125 Pac. 132, has been modified in *Parchen* v. *Chessman, supra.*

In the case of *Calton* v. *Lewis,* 119 Ind. 181, 21 N. E. 475, it was held that the mistake might occur through inadvertence. And negligence will not defeat reformation in such a case. (*Baker* v. *Pyatt,* 108 Ind. 61, 9 N. E. 112.) The mistake, which is ground for the reformation of a legal instrument in equity, includes cases where the legal effect of the terms agreed upon by the parties to be employed in a written instrument, through a misapprehension or ignorance of their import, results in a contract different from that really entered into by them. (*Moore* v. *Tate,* 114 Ala. 582, 21 South. 820.)

The words "more or less" as used in a description declaring that the land conveyed contained a specified number of acres did not mean as estimated or supposed, but should be

construed to mean about the specified number of acres, and are designed to cover only such small errors as usually occur in surveying. (*Crislip* v. *Cain*, 19 W. Va. 438; *Hodges* v. *Kowing*, 58 Conn. 12, 7 L. R. A. 87, 18 Atl. 979; *Tyler* v. *Anderson*, 106 Ind. 185, 6 N. E. 600; *Morris Canal Co.* v. *Emmett*, 9 Paige Ch. (N. Y.) 168, 37 Am. Dec. 388; *Shipp* v. *Swann*, 2 Bibb (5 Ky.), 82.) When it is evident that there has been a gross mistake as to quantity, and the complaining party has not been guilty of any fraud or culpable negligence, nor has otherwise impaired the equity resulting from the mistake, he may be entitled to relief from the technical or legal effect of his contract, whether it be executed or only executory. (*Harrison* v. *Talbot*, 2 Dana (32 Ky.), 258.)

The words "more or less" are intended to cover a reasonable excess or deficit. If the difference between the real and the represented quantity be very great, both parties act obviously under a mistake, which it will be the duty of a court of equity to correct. (*Thomas* v. *Perry*, 23 Fed. Cas. (No. 13,908) 964; *Putnam* v. *Hill*, 2 Russ. 520; *Hill* v. *Solinger*, 17 Ves. 395; *Solinger* v. *Jewett*, 25 Ind. 479, 87 Am. Dec. 372.) This rule was applied where land was sold as containing twenty acres, more or less, where in fact it only contained thirteen acres. (*Veeder* v. *Fonda*, 3 Paige (N. Y.), 94.) Where the excess or deficiency is gross, it will justify the conclusion of willful deception or mistake. (*Wylly* v. *Gazan*, 69 Ga. 506, 516; *Gentry* v. *Hamilton*, 38 N. C. 376; *Belknap* v. *Sealey*, 14 N. Y. 143, 67 Am. Dec. 120; *Smith* v. *Fly*, 24 Tex. 345, 76 Am. Dec. 109; *Couse* v. *Boyle*, 4 N. J. Eq. 212, 216, 38 Am. Dec. 514; *Wheeler* v. *Boyd*, 69 Tex. 293, 6 S. W. 614, 617.) The words "more or less" should never allow an excess or a deficit of over five per cent, except it was clearly expressed that they should cover any and all discrepancies. (*Pratt* v. *Bowman*, 37 W. Va. 715, 17 S. E. 210; *Bigham* v. *Madison*, 103 Tenn. 358, 47 L. R. A. 267, 52 S. W. 1074; *Newton* v. *Tolles*, 66 N. H. 136, 49 Am. St. Rep. 593, 9 L. R. A. 50, 19 Atl. 1092; *Kreiter* v. *Bomberger*, 82 Pa. St. 59, 22 Am. Rep. 750; *Paine* v. *Upton*, 87 N. Y. 327, 41 Am. Rep. 371.) The dis-

crepancy in this instance of more than twenty acres, where only forty were intended to be sold, would seem to justify the trial court, in connection with the other facts and circumstances in the case, in concluding that there was a mistake which should be remedied to prevent injustice to Cox, and an unjust enrichment of Hall.

MR. JUSTICE SANNER delivered the opinion of the court.

On and prior to April 12, 1909, the plaintiff, George B. Cox, was in the rightful possession of the E. ½ and the E. ½ of the W. ½ of section 5, Tp. 2 S., R. 5 W., in Madison county, Montana, under contract of purchase with the defendant Pace-Woods Improvement Company, which tract includes a triangular piece of ground containing 63.06 acres, as illustrated below:

The complaint alleges, in substance: That on April 12, 1909, the plaintiff and the defendant Hall completed negotiations for the purchase by Hall of that portion of said triangular tract lying east of a certain line (marked in the diagram A–B), reserving to the plaintiff a strip thirty feet wide along the east side-line as a road, for the consideration of $1,000, to be paid by Hall to the defendant Pace-Woods Improvement Company for credit by it on Cox's contract, providing said company would assent to such agreement and would convey to Hall in accord-

ance therewith; that the parties waited upon Mr. Ike E. O. Pace, the secretary of the improvement company, and Cox, in the presence and hearing of Hall, explained the transaction to Mr. Pace, pointing out upon a map the boundaries of the piece which Hall was to receive; that the improvement company assented, and Cox thereupon instructed Pace to draw such written instruments as would be required to put the agreement into effect; that Pace, in an abortive attempt so to do, indorsed upon Cox's contract of purchase the following:

"April 12, 1909.

"George B. Cox for and in consideration of the sum of $1.00 and other things of value does hereby release from this contract all ground between the Parrot Silver and Copper Company's Ditch, and the N. P. Ry. Co. right of way, 40 acres more or less, and contracts that same be deeded to M. S. Hall and the purchase price of $1,000 credited on this contract. Also 40 inches of water.

"[Signed]     Geo. B. Cox.

"Witness: Ike E. O. Pace."

That Pace is an attorney at law, and, because of previous dealings with him, Cox reposed confidence in his ability to understand the agreement, to reduce the same to writing, and to properly describe the land involved therein, as pointed out to him, and by such confidence Cox was led to believe, and did believe, the indorsement to correctly describe such land, "and, so believing and relying, plaintiff inadvertently signed said instrument and indorsement"; that thereafter and in a further abortive attempt to carry out the agreement between Cox and Hall, the defendant improvement company conveyed to Hall the entire triangular tract above described, and consisting of 63.06 acres, in conformity to the description contained in said indorsement; that said indorsement and conveyance are erroneous and do not express the agreement between Cox and Hall, in that they omit the western boundary of the piece sold to Hall (to-wit, the line A–B), and do include the smaller triangle containing 21.33 acres lying between the railroad and the Parrot ditch and west of the

line A–B, which never was intended to be conveyed to Hall; that thereafter plaintiff completed his contract of purchase and demanded of the improvement company a deed for the lands so contracted for, less the tract sold to Hall, and the company executed and delivered to him a deed for said lands, less the entire piece, containing 63.06 acres as described in the indorsement and conveyance to Hall, which deed the plaintiff took under protest; that after conveyance by the company to Hall, Hall advised plaintiff that the deed from the improvement company was erroneous by reason of the excess above mentioned, and agreed to have the error corrected, requesting plaintiff to ascertain from Pace what was necessary to remedy the mistake; that accordingly plaintiff called upon Pace, who answered that if Hall would bring the deed, he (Pace) would have it changed to read correctly and in accordance with the agreement, and such answer plaintiff conveyed to Hall, demanding that Hall take his deed to Pace for correction or else convey direct to plaintiff the parcel containing 21.33 acres lying west of the line A–B; but Hall has ever since failed and neglected, and now refuses, to do either; on the contrary, he has against the will and without the consent of plaintiff taken possession of said tract and ousted plaintiff therefrom, torn down the fences thereon, *etc.:* that before the commencement of this action plaintiff also demanded of defendant improvement company that it correct its said conveyances to him and to Hall so as to include in the former, and exclude from the latter, the parcel west of the line A–B, but the company has failed, neglected and refused so to do. The prayer is for a reformation and correction of the instruments accordingly, for an injunction against interference with plaintiff in the possession of the tract, for damages sustained, and for costs.

Issues were joined and the cause brought for trial before the court sitting without a jury, and the court, after hearing the evidence, made findings of fact and conclusions of law upon which a judgment and decree for plaintiff was entered. Defendants' motion for new trial was later overruled, and these appeals are the result.

1. The relief granted by the decree substantially accords with the prayer of the complaint, and defendants' first contention is that the complaint does not state facts sufficient to warrant such relief. This contention is grounded upon the proposition that no mutual mistake of the parties is made to appear; the plaintiff's plea of inadvertence in signing the indorsement being fatal to the contention of mistake, because it implies negligence on his part. The modern law of this state upon this subject is laid down in *Hennessy* v. *Holmes,* 46 Mont. 89, 125 Pac. 132, *Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469, and *Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315, and these authorities establish: That when a complaint proceed-

**[1-3]**   ing on the theory of mutual mistake alleges facts which command the inference of such mistake, unless deliberate fraud is imputed, such complaint sufficiently alleges mistake; that the term "mistake" always involves the conception that the victim has been guilty of some degree of negligence which may or may not be excusable in the circumstances of the particular case; and that courts of equity are not bound by cast-iron rules, but are governed by rules which are flexible and adapt themselves to particular exigencies, so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other. The application of these principles to the complaint before us is obvious and deci-

**[4]**   sive. According to its allegations, plaintiff and Hall had a certain agreement. They repaired to Pace to have that agreement put in proper form. Cox in Hall's presence stated the agreement accurately; Pace presented a writing which did not state the agreement accurately, but Cox, relying on Pace's integrity and ability, failed to observe the inaccuracy; Hall likewise failed, or, if he noticed the error, made no mention of it; the result was to convey to Hall 21.33 acres of land, which neither party intended he should have in consequence of their transaction. The circumstances pleaded in principle approach those detailed in *Parchen* v. *Chessman, supra,* and if they do not suffice to warrant relief, then the entire doctrine of mistake as

ground for relief is unintelligible. We think the complaint is sufficient.

2. To us, out of the presence and hearing of the witnesses, it appears that the court below might well have reached a different result; but it would be a gross perversion to say that the findings and decree are without substantial evidence to support them. The testimony of Cox alone is sufficient, if taken as true, for that; and this testimony, supported more or less by that of others, is reinforced by the silence of Pace, who more than anyone else should have been able to tell just exactly what occurred; hence · we cannot even conclude, as the defendants insist, that the findings and judgment are against the true weight of the evidence. It is vigorously argued, however, that in the last analysis the judgment rests upon findings 6 and 7, and that they have no foundation in the pleadings or the proof. As to finding 7 this is manifestly not the case; it embodies the substance of paragraphs 5, 6 and 7 of the complaint, and is well supported by [5] evidence. Finding No. 6 is ''that plaintiff Cox is a man of meager education, and not familiar with land surveys or descriptions, and is unable to properly describe land, technically or legally, or detect errors in such descriptions.'' In point of fact this follows the testimony of Cox and, possibly, the deductions inferable from his presence and conduct. It is true that there is no specific allegation in the complaint upon this subject, but proof of the general allegation of mistake involves such considerations as are expressed by the finding; so that the finding, though unnecessary, was germane to the issues and, in this sense, supported by the pleadings.

3. It is contended that the record discloses a clear case of [6] laches which, under the maxim, ''Equity aids only the vigilant,'' should bar recovery. The answers contain no specific plea of estoppel by laches, and the claim now made is based upon the fact that suit was not brought until April 2, 1912. The testimony shows that, although Cox had learned from Hall of the error, had been led to believe that Hall would assent to its correction, and had later learned the contrary, he was not finally advised that correction would be denied, and was therefore not

in position to seek relief in court, until he got his deed from the improvement company in November, 1910. From that time on he used reasonable diligence in bringing on his claim for adjudication, but was delayed by a series of circumstances beyond his control, until April, 1912. We have repeatedly declared that though "laches may arise from an unexplained delay short of the period fixed by the statute of limitations * * * still laches will not be presumed from such a delay alone. It must be made to appear affirmatively that unusual circumstances exist which on account of such delay render the proceeding inequitable; else relief cannot be denied on this ground." (*Brundy* v. *Canby*, *supra; Wright* v. *Brooks*, 47 Mont. 99, 130 Pac. 968.) No such circumstances are presented here.

4. Citing *Trinkle* v. *Jackson*, 86 Va. 238, 4 L. R. A. 525, 9 S. E. [7] 986, the defendants argue that the particular correction here awarded was improper, because "a contract for the sale of land, in which the tract is stated to contain a given quantity, more or less, the intention being to sell the land in gross, is one of hazard, which places upon each party the risk of excess or deficiency, and prevents each from asking relief in case the quantity proves to be different from that stated." This is true, but beside the mark. The matter in question here is, What tract did Cox agree to sell and Hall to buy? The expression, "so many acres more or less," is designed to cover small excesses or deficiencies in the acreage of a particular tract sold as such; it may be, and often is, collateral evidence to show the intent of the parties; but it cannot be used to warrant the inclusion of something which it never was the intention of the parties to include.

5. We see nothing in the criticism of the form of the decree justifying interference by us.

The judgment and order appealed from are affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.