[Civil No. 1618.   Filed June 15, 1918.]

[173 Pac. 880.]

# WILLIAM A. MOORE, Appellant, v. WILLIAM A. MOODY, Appellee.

1. PUBLIC LANDS—"CONSTRUCTIVE POSSESSION."—Possession of such part of unsurveyed public lands within the boundaries of an appropriator's claim as are not actually used by him is "constructive."

  [As to rights of prescriptors, see note in 87 Am. Dec. 132.]

2. PROPERTY—CONSTRUCTIVE POSSESSION.—Constructive possession unless founded upon a legal right is inferior to actual possession.

3. PUBLIC LANDS—ACTUAL PEACEABLE POSSESSION—RIGHTS OF SETTLER. Revised Statutes of 1913, paragraphs 4717, 4718, as to acquiring title to public lands and as to distinctly marking boundaries of claim, protect a prior settler on unsurveyed public lands in his actual peaceable possession without regard to monuments or record notices, for the reason that prior settlement gives prior right, and actual possession gives actual notice of the extent of such right.

4. PUBLIC LANDS—APPROPRIATION—PRIORITY.—Revised Statutes of 1913, paragraphs 4717, 4718, protect the prior claimant's peaceable possession of unsurveyed public lands to the extent of the boundaries as marked by him not including more than 160 acres against all persons having actual knowledge of marked boundaries or constructive notice thereof from filed record notice.

5. PUBLIC LANDS — APPROPRIATION OF UNSURVEYED LANDS — RECORDS.— Monuments showing boundaries of claim of an appropriator of unsurveyed public lands control calls of description in filed record notice where description in notice does not agree with monuments.

6. EVIDENCE—ADMISSIONS BY AGENT AS TO BOUNDARIES.—Statement of plaintiff's herder as to boundary of plaintiff's claim to unsurveyed public lands would not bind plaintiff as against defendant, a subsequent appropriator, who had actual knowledge of extent of plaintiff's claim.

7. PUBLIC LANDS—NOTICE OF CLAIM—RIGHT OF SUBSEQUENT APPROPRIATOR.—Erroneous description in recorded notice of claim to unsurveyed public lands would not bind plaintiff appropriator as to defendant subsequent appropriator, who had actual knowledge of extent of plaintiff's claim.

8. PUBLIC LANDS—CLAIM — APPROPRIATION — ABANDONMENT.—That an appropriator of unsurveyed public lands caused a corral and a house to be torn down and removed may be denominated an act of dominion as well as an act of abandonment.

APPEAL from a judgment of the Superior Court of the county of Graham. A. G. McAlister, Judge. Affirmed.

The defendants, William A. Moore, Andrew Brimhall, Evans Coleman and Thomas Hundley are sued to quiet title to a portion of unsurveyed public land in Graham county, alleged to be held by plaintiff by right of possession, pursuant to paragraph 4717, Revised Statutes of Arizona, of 1913. The defendants Moore and Brimhall assert a right to possession of a portion of plaintiff's claim by reason of having located and occupied a similar claim by reason of a full compliance with the provisions of said paragraph 4717, Revised Statutes of Arizona of 1913. The other defendants disclaim any interest. An undefined portion of defendant Moore's possessory claim conflicts with plaintiff's possessory claim. The plaintiff's rights date from the years 1908 and 1911, and defendant Moore's asserted rights date from June, 1916.

The cause was tried to the court without a jury. The court made and filed findings of fact, and rendered judgment for the plaintiff for the reason that the plaintiff has had the possession of the premises claimed by him since April, 1911, by reason of the marking of the boundaries of his claim on the ground and the written notice, made under oath, filed and recorded, of which defendants have had actual 'notice. From the judgment the defendant William A. Moore alone appeals.

Mr. Lyman H. Hays, for Appellant.

Mr. W. R. Chambers and Messrs. Stratton & Lynch, for Appellee.

CUNNINGHAM, J. (After Stating the Facts as Above).— The first case decided by the supreme court of the territory of Arizona, *Davis* v. *Simmons*, 1 Ariz. 25, 25 Pac. 535, decided at the January, 1866, term, gives to the settler upon unsurveyed public lands first in time first in right of possession. The natural justice of that proposition cannot be questioned. The proposition that priority of appropriation of the unsurveyed public lands by settlement gives priority of right to the premises appropriated is settled law in this state.

The plaintiff, W. A. Moody, had, under the evidence, the actual possession of a portion of the premises claimed. He had made improvements thereon, consisting of houses and corrals for goats, and actually used a large portion of the premises for the purpose of caring for his herd of goats. Part of the said premises in actual constant use, including some of the improvements, he had purchased from the appellant, W. A. Moore, paying Moore $150 therefor. Another portion of plaintiff's claim, the northern end of the tract claimed, appellee had purchased from other claimants, of which Moore had actual notice. The area of conflict of Moore's claim with Moody's claim covers a portion of the northern end of Moody's claim. The extent of the conflict is not shown in the record as furnished by the abstract. The boundaries of Moody's claim are marked on the ground by monuments of stone placed at each of the four corners of the claim. Moody for many years had used a spring situate on the northern end of his claim within the boundaries of the claim for watering his goat herd. Prior to April, 1916, Moody had maintained a small house and a corral near the spring, but he had removed all of such improvements prior to April, 1916.

Of course, Moody's possession of the premises lying within the boundaries of his claim not actually used by him for the purpose of tending to his herd of goats was constructive possession, in its nature. Constructive possession, unless founded upon a legal right, is inferior to actual possession. The plaintiff relies upon the marking of the boundaries of the north end of his claim by stone monuments, and upon the notice of his claim made under oath and filed and recorded by him on the twenty-sixth day of April, 1911, as giving to him the prior right to and constructive possession of the premises marked on the ground. The statute (chapter 4 of title 46, C. C. A. 1913, being a compilation of title 52, Ariz. Rev. Stats. 1901) under the authority of which both parties here bases his right clearly protects the settler upon the unsurveyed public lands in the actual peaceable possession and quiet enjoyment of such tract so actually possessed, with all the improvements thereon, and likewise protects such settler's possession to the extent of 160 acres in compact form, provided such settler do two things: First, distinctly mark the boundaries of his claim that it may be

easily traced; second, and he shall accurately describe the same in a written notice, under oath, showing the time when the location was made, with a description, and that it does not contain more than 160 acres, which notice must be recorded in the office of the county recorder of the proper county.

The manifest purpose of the statute in requiring the settler to distinctly mark the boundaries of his claim that it can be easily traced, and file and record written notice of his claim containing an accurate description of the claim, is to give notice to the world of the extent of his claim, and thereby define the settler's constructive possession. The statute protects the prior settler in his actual peaceable possession of the claim at all times, without regard to monuments or recorded notices, for the reason prior settlement gives prior right and actual possession gives actual notice of the extent of such right.

The statute protects the prior claimant's peaceable constructive possession to the extent of the boundaries as marked upon the ground against the intrusion of all persons having actual notice of the claim communicated by the marked boundaries, or otherwise, and against all persons charged with constructive notice of the extent of the claim communicated by the filed recorded notice of the claimant from the date of the marking of the boundaries and the filing of the said notice. When the settler has improved a portion of his claim on unsurveyed public lands and marked the boundaries of his claim distinctly on the ground, the statute vests in him a right to the possession of all the land claimed, the boundaries of which he has marked, provided, of course, the extent of the claim marked on the ground does not exceed 160 acres. The constructive possession of portions of the claim not actually possessed by the claimant is nevertheless held by him by virtue of such vested right.

The monuments defining the boundaries of the claim on the ground control the calls of the description in the filed recorded notice in case the description as found in the notice does not agree with the monuments on the ground. I presume this rule cannot be doubted as applied to the facts of this case, as the rule has been universally applied to all other muniments of title to real property.

In this case the defendants had actual notice of the extent of Moody's claim. They were as familiar with the boundaries of his claim on the north end as Moody, or Cluff, or any other person. Moore must be considered as having actual knowledge of the boundaries of Moody's claim years prior to the date upon which he (Moore) attempted to wrest a portion of the claim from Moody. The evidence presents Moore as having attempted to appropriate a large portion of ground he knew rightly belonged to Moody, and this upon an assertion that Moody's Mexican herder indicated that Moody's northerly end line was about nine feet north of the dwelling-house in which the Mexican and family were living; second, upon some misdescription in the recorded notice of the claim; and third, upon the abandonment of the north end of the claim, in that the little house and corral previously on the land had been torn down and removed. The statement of the Mexican herder cannot bind Moody. The erroneous description in the notice of the claim would bind Moody in case a person honestly acted upon the notice and the description therein, and mistakenly laid a claim on that ground. Defendants could not be placed in such position for the reason they knew the conditions on the ground better than they knew the description of the claim as written in the notice. The fact that Moody caused a corral and house to be torn down and removed may be referable to an act of dominion, of ownership over the property, with as much consistency as to the fact of abandonment.

The evidence abundantly sustains the judgment, and must be affirmed.

FRANKLIN, C. J., and ROSS, J., concur.